# In the United States Court of Federal Claims

**OFFICE OF SPECIAL MASTERS**
**No. 18-1353V**
Filed: October 21, 2026

| | |
|---|---|
| CHERYL DEWIT, | * |
| Petitioner, | * |
| v. | * |
| SECRETARY OF HEALTH AND HUMAN SERVICES, | * |
| Respondent. | * |

*Howard D. Mishkind, Esq.,* Mishkind Kulwicki Law Co., L.P.A., Cleveland, OH, for petitioner.
*Catherin E. Stolar, Esq.,* US Department of Justice, Washington, DC, for respondent.

## DECISION ON ATTORNEYS' FEES AND COSTS[1]

**Roth**, Special Master:

On September 5, 2018, Cheryl DeWit ("petitioner") filed the instant petition for compensation under the National Vaccine Injury Compensation Program,[2] alleging that she developed transverse myelitis after receiving an influenza ("flu") vaccine on October 7, 2015. Petition, ECF No. 1. On December 8 and 9, 2022, the Court held a two-day entitlement hearing. The Court issued its decision denying entitlement on February 25, 2026. ECF No. 93.

On August 19, 2026, petitioner filed a Motion for Attorneys' Fees and Costs. ECF No. 96. Respondent filed his response on September 2, 2026, stating that he "is satisfied the statutory requirements for an award of attorneys' fees and costs are met in this case." ECF No. 97 at 2.

[1] Because this Decision contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, the undersigned finds that the identified material fits within this definition, such material will be redacted from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all "§" references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2018).

Petitioner's Motion for Attorney Fees requests a total of $234,376.11, representing $211,685.24 in attorneys' fees with $99,577.00 billed by Howard Mishkind, $112,108.24 billed by Amber Wilson, and $22,690.87 in costs. ECF No. 96 at 8. Respondent noted that "[t]o the extent petitioner is requesting higher expert hourly rates than what has typically been awarded in the past," the Court should more heavily scrutinize the proposed justification for those rates. ECF No. 97 at 4.

After consideration, petitioner's motion is **GRANTED in part**.

## I. Legal Framework

The Vaccine Act permits an award of "reasonable attorneys' fees" and "other costs." § 15(e)(1). If a petitioner succeeds on the merits of his or her claim, the award of attorneys' fees is automatic. *Id.*; *see Sebelius v. Cloer*, 569 U.S. 369, 372-73 (2013). However, a petitioner need not prevail on entitlement to receive a fee award as long as the petition was brought in "good faith" and there was a "reasonable basis" for the claim to proceed. § 15(e)(1). Here, because petitioner was awarded compensation pursuant to a proffer, she is entitled to a final award of reasonable attorneys' fees and costs.

The Federal Circuit has endorsed the use of the lodestar approach to determine what constitutes "reasonable attorneys' fees" and "other costs" under the Vaccine Act. *Avera v. Sec'y of Health & Hum. Servs.*, 515 F.3d 1343, 1349 (Fed. Cir. 2008). Under this approach, "an initial estimate of a reasonable attorneys' fees" is calculated by "multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate." *Id.* at 1347–48 (quoting *Blum v. Stenson*, 465 U.S. 886, 888 (1984)). That product is then adjusted upward or downward based on other specific findings. *Id.*

Special masters have substantial discretion in awarding fees and may adjust a fee request *sua sponte*, apart from objections raised by respondent and without providing petitioners with notice and opportunity to respond. *See Sabella v. Sec'y of Health & Hum. Servs.*, 86 Fed. Cl. 201, 209 (2009). Special masters need not engage in a line-by-line analysis of petitioner's fee application when reducing fees. *See Broekelschen v. Sec'y of Health & Hum. Servs.*, 102 Fed. Cl. 719, 729 (2011).

## II. Discussion

### A. Reasonable Hourly Rate

A "reasonable hourly rate" is defined as the rate "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Avera*, 515 F.3d at 1348 (quoting *Blum*, 465 U.S. at 896 n.11). In general, this rate is based on "the forum rate for the District of Columbia" rather than "the rate in the geographic area of the practice of petitioner's attorney." *Rodriguez v. Sec'y of Health & Hum. Servs.*, 632 F.3d 1381, 1384 (Fed. Cir. 2011) (citing *Avera*, 515 F. 3d at 1349). There is a "limited exception" that provides for attorney's fees to be awarded at local hourly rates when "the bulk of the attorney's work is done outside the forum jurisdiction" and "there is a very significant difference" between the local hourly rate and forum

hourly rate. *Id.* This is known as the *Davis County* exception. *See Hall v. Sec'y of Health & Hum. Servs.*, 640 F.3d 1351, 1353 (2011) (citing *Davis Cnty. Solid Waste Mgmt. & Energy Recovery Special Serv. Dist. v. U.S. EPA*, 169 F.3d 755, 758 (D.C. Cir. 1999)).

For cases in which forum rates apply, *McCulloch* provides the framework for determining the appropriate hourly rate range for attorneys' fees based upon the attorneys' experience. *See McCulloch v. Sec'y of Health & Hum. Servs.*, No. 09–293V, 2015 WL 5634323 (Fed. Cl. Spec. Mstr. Sept. 1, 2015). The Office of Special Masters has accepted the decision in *McCulloch* and has issued a Fee Schedule for subsequent years.[3]

Petitioner requests the following hourly rates on behalf of the attorneys and staff who worked on this case:

| **Name** | **2016** | **2017** | **2018** | **2019** | **2020** | **2021** | **2022** | **2023** | **2024** | **2025** | **2026** |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Howard Mishkind | $300 | $350 | $400 | $400 | $425 | $450 | $475 | $490 | $550 | $575 | $590 |
| Amber Wilson | - | - | - | - | - | - | $427 | $454 | - | - | $518 |
| Paralegals | $100 | $100 | $125 | $125 | $125 | $140 | - | - | - | - | - |

These rates are consistent with what Mr. Mishkind, the paralegals at his firm and Ms. Wilson have been previously awarded and with the rates provided in the Fee Schedule. *See, e.g, Boyle v. Sec'y of Health & Hum. Servs.*, No. 21-1257V, 2025 WL 2496217, at * 2 (Fed. Cl. Spec. Mstr. July 29, 2025; *Williams v. Sec'y of Health & Hum. Servs.*, No. 19-1163V, 2021 WL 3265077, at *2 (Fed. Cl. Spec. Mstr. June 30, 2021); *Munoz v. Sec'y of Health & Hum. Servs.*, No. 21-1369V, 2024 WL 2730966, at *3 (Fed. Cl. Spec. Mstr. May 1, 2024). Thus, the requested rates are reasonable.[4]

### B. Hours Reasonably Expended

Attorneys' fees are awarded for the "number of hours reasonably expended on the litigation." *Avera*, 515 F.3d at 1348. Counsel should not include in their fee requests hours that are "excessive, redundant, or otherwise unnecessary." *Saxton ex rel. Saxton v. Sec'y of Health & Hum. Servs.*, 3 F.3d 1517, 1521 (Fed. Cir. 1993) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)). "Unreasonably duplicative or excessive billing" includes "an attorney billing for a single task on multiple occasions, multiple attorneys billing for a single task, attorneys billing excessively for intra office communications, attorneys billing excessive hours, [and] attorneys entering erroneous billing entries." *Raymo v. Sec'y of Health & Hum. Servs.*, 129 Fed. Cl. 691, 703 (2016). While attorneys may be compensated for non-attorney-level work, the rate must be comparable to what would be paid for a paralegal or secretary. *See O'Neill v. Sec'y of Health & Hum. Servs.*, No. 08–243V, 2015 WL 2399211, at *9 (Fed. Cl. Spec. Mstr. Apr. 28, 2015). Clerical and secretarial tasks should not be billed at all, regardless of who performs them. *See, e.g.*, *McCulloch*, 2015 WL

[3] The OSM Attorneys' Forum Hourly Rate Fee Schedules are available on the U.S. Court of Federal Claims website at OSM Attorneys' Forum Hourly Rate Fee Schedules | Court of Federal Claims | United States. The hourly rates contained within the schedules are updated from the decision in *McCulloch v. Sec'y of Health & Hum. Servs.*, No. 09-293V, 2015 WL 5634323 (Fed. Cl. Spec. Mstr. Sept. 1, 2015).

[4] Attorney Amber Wilson's 2026 rate has not yet been set, and I decline to do so here. Under the circumstances of this case, I find Ms. Wilson's total requested compensation for 2026 reasonable.

5634323, at *26. Hours spent traveling are ordinarily compensated at one-half of the normal hourly attorney rate. *See Scott v. Sec'y of Health & Hum. Servs.*, No. 08–756V, 2014 WL 2885684, at *3 (Fed. Cl. Spec. Mstr. June 5, 2014) (collecting cases). And "it is inappropriate for counsel to bill time for educating themselves about basic aspects of the Vaccine Program." *Matthews v. Sec'y of Health & Hum. Servs.*, No 14–1111V, 2016 WL 2853910, at *2 (Fed. Cl. Spec. Mstr. Apr. 18, 2016). Ultimately, it is "well within the Special Master's discretion to reduce the hours to a number that, in [her] experience and judgment, [is] reasonable for the work done." *Saxton*, 3 F.3d at 1522. In exercising that discretion, special masters may reduce the number of hours submitted by a percentage of the amount charged. *See Broekelschen*, 102 Fed. Cl. at 728–29 (affirming the Special Master's reduction of attorney and paralegal hours); *Guy v. Sec'y of Health & Hum. Servs*., 38 Fed. Cl. 403, 406 (1997) (same).

Upon review of the billing records, the majority of entries adequately describe the work performed, and the time billed corresponds with that work. Some of Mr. Mishkind's billing entries, however, constitute block billing. "Several tasks grouped together in a single time-entry makes it difficult to decipher the amount of time spent on each task and thus, the reasonableness of the request. Such billing practices are clearly disfavored in the Program." *Tan v. Sec'y of Health & Hum. Servs.*, No. 23-1566V, 2026 Wl 1680598, at *2 (Fed. Cl. Spec. Mstr. May 8, 2026). For example, on November 28, 2022, Mr. Mishkind logged 2.5 hours spent on "Email from Dr. Levy concerning his availability for both days as scheduled; email to Dr. Levy to clarify and review of his email on prong 2 and 3, [] review of cited literature and prep of notes for opening and distinguishing respondent's experts' opinions." ECF No. 96-3 at 9. There are no fewer than four separate activities contained in this one billing entry, making it impossible for the Court to adequately review whether an appropriate amount of time was billed for each task. For another example, on October 31, 2022, Mr. Mishkind billed three hours for "Review of TM literature including IOM 2012 articles; email to Dr. Levy to set up trial preparation; review of MRI interpretations and email same to Dr. Levy." *Id*. at 8. In this one billing line, there are once again four separate activities.

Mr. Mishkind is advised that such billing practices are unacceptable in the Program, and he must rectify this practice in the future or risk reduction of his fees.

Further, Mr. Mishkind is the lead partner of his firm and is an experienced attorney both outside and within the Vaccine Program as evidenced by his approved hourly rates. He competently handled this case throughout its pendency. He apparently sought Ms. Wilson's participation in 2022 according to her billing record. Ms. Wilson is not a member of Mr. Mishkind's firm, and her involvement was revealed to the Court just prior to the Hearing when Mr. Mishkind advised that she would be his second chair. Mr. Mishkind's billing records show he consistently worked on this file from 2016 through 2023, with only one billing entry for 2024, one in 2025, and two in 2026, for a total of 192.5 hours over a 10-year period. Ms. Wilson's billing record includes billing from September 2022 through October 2023 with three entries in 2026, for a total of 256.21 hours. Mr. Mishkind is certainly entitled to seek assistance in a case if he chooses but should be aware of the disparity between his billing over a 10-year period with that of Ms. Wilson who billed an extraordinary amount of time over a 13-month period with three additional entries in 2026 to his one for that year. Ms. Wilson's billing records detail the work that she performed, most of which included reviewing the evidence filed, assisting with briefing and

attendance at with some participation at the hearing. What, if anything, Ms. Wilson added with her participation is questionable. However, her efforts were well documented and she will be paid, but Mr. Mishkind is cautioned when seeking assistance from outside counsel, to be aware of repetitive, duplicative and excessive billing when doing so.

Petitioner is awarded $211,685.24 in attorneys' fees, representing $99,577.00 for Howard Mishkind and $112,108.24 for Amber Wilson.

**C. Reasonable Costs**

Like attorneys' fees, a request for reimbursement of attorneys' costs must be reasonable. *Perreira v. Sec'y of Health & Hum. Servs.*, 27 Fed. Cl. 29, 34 (Fed. Cl. 1992). Additionally, "a petitioner seeking reimbursement of expert costs must submit '(a) contemporaneous time sheets showing how many hours were billed on a specific task multiplied by a proposed hourly rate; and (b) any other information petitioner deems necessary to substantiate the reasonableness of the work for which reimbursement is being sought.'" *Ginsberg v. Sec'y of Health & Hum. Servs.*, 179 Fed. Cl. 107, 114 (2025) (citing RCFC 2d Supp. to App. B, Rule 3; *see also* RCFC 2d Supp. to App. B, Rule 1(a)(i)(B) ("Each individual task should have its own entry indicating the amount of time dedicated to that task. Time should be billed in increments of one-tenth of an hour.")). "The "'failure to document the claimed costs results in denial of that claim.'" *Id.* (quoting *Sabella v. Sec'y of Health & Hum. Servs.*, 86 Fed. Cl. 201, 205 (2009)). Petitioner requests a total of $22,690.87 in costs on behalf of counsel. ECF No. 96 at 8. This amount includes $1,690.87 in routine costs associated with acquiring medical records, postage, and the filing fee. *Id*. They are thus awarded in full.

Petitioner also requests a total of $21,000.00 for her expert Dr. Levy at a rate of $750 per hour for all work performed from 2020 through 2023. On April 9, 2020, a check was issued to Dr. Levy in the amount of $3,375 for "Document Review and Report." ECF No. 96-4 at 1, 2. Dr. Levy's billing record for "Document Review and Report" consisted of the following: two hours for "[d]ocument review," 0.5 hours for "[p]hone discussion," and two hours for "[r]eport draft." *Id.* at 2. The additional $17,675.00 billed by Dr. Levy is documented in an invoice dated March 24, 2023, which included a total of 22.5 hours for drafting response reports, phone calls, a pre-hearing meeting, attendance at the hearing, and post-hearing meetings and reports. ECF No. 96-5 at 1, 2. In total, Dr. Levy spent 27 hours presumably reviewing all of the medical records, writing reports, discussing the case with counsel, attending a two-day hearing, and issuing a post-hearing report. Dr. Levy is a highly credentialed neuroimmunologist who, since the hearing in this case, has regularly appeared in the Vaccine Program. However, this was one of the first cases in the Program in which he was involved and the first case in which he testified. This case was complicated with two contentious issues involving petitioner's onset of symptoms and her diagnosis. Dr. Levy's testimony was at times unclear, inconsistent, and in conflict with the medical records. His reports were also in conflict with one another and with his testimony.

An expert's compensation may be reduced based on their performance. *See, e.g.*, *Frantz v. Sec'y of Health & Hum. Servs.*, 146 Fed. Cl. 137, 146 (2019); *Murray v. Sec'y of Health & Hum. Servs.*, No. 19-1976V, 2023 WL 9503422, at *2-3 (Fed. Cl. Spec. Mstr. Dec. 22, 2023) (reducing expert's rate from $500 per hour to $100 per hour). This was one of the first cases in which Dr.

Levy was involved and the first case in which he testified, which is "a factor that often justifies only a lower rate." *Deshler v. Sec'y of Health & Hum. Servs.*, No. 16-1070V, 2020 WL 8674681, at *3 (Fed. Cl. Spec. Mstr. Dec. 10, 2020). Further, petitioner provided no support for Dr. Levy's rate of $750 an hour in this case. Notably, Dr. Steinman who routinely appears in the Vaccine Program and is a neuroimmunologist like Dr. Levy, with many more years of experience in both practice and in the program, had for many years been paid at a T*Servs.*, No. 17-1851V, 2023 WL 3775170, at *6 (Fed. Cl. Spec. Mstr. June 2, 2023) (collecting cases) (awarding Dr. Steinman $550 per hour for work performed in 2020 and 2021 due to his "demonstrated expertise in the field of neuroimmunology and extensive experience in the Vaccine Program").

Other cases in the Program have paid Dr. Levy at a rate of between $500 and $600 per hour. *See, e.g.*, *Good v. Sec'y of Health & Hum. Servs.*, No. 17-124V, 2023 WL 2534664, at *5 (Fed. Cl. Spec. Mstr. Mar 16, 2023) (awarding the rate of $600 for Dr. Levy based on the billing records); *Wechsler v. Sec'y of Health & Hum. Servs.*, No. 17-1018V, 2021 WL 965639, at *3 (Fed. Cl. Spec. Mstr. Feb. 10, 2021) (reducing Dr. Levy's requested $600 rate to $500). In only one case, Dr. Levy was paid his requested $750 per hour. *See Guzman v. Sec'y of Health & Hum. Servs.*, No. 22-957V, 2025 WL 1891419, at *3 (Fed. Cl. Spec. Mstr. June 9, 2025). But in that case, the Chief Special Master deemed the total sum, not the hourly rate specifically, reasonable, particularly in light of the Chief Special Master's personal request for expert input. Those factors are not relevant here. Dr. Levy's performance in this matter does not warrant his requested rate of $750 per hour. Under the circumstances of this case and considering Dr. Levy's experience in the Program at the time and his performance, an hourly rate of $500 per hour is reasonable. Therefore, the total award in compensation for Dr. Levy's work in this case is $14,000.00, a reduction in the amount requested of $7,000.00.

Petitioner is awarded a total of $15,690.87 in costs.

## III. Conclusion

Based on the foregoing, petitioner's Motion for Attorneys' Fees and Costs is **GRANTED in part**. Petitioner is hereby awarded a **total of $227,376.11**. This total represents $112,108.24 in attorneys' fees for Amber Wilson, **to be paid through an ACH deposit to Ms. Wilson's IOLTA account for the legal firm of Wilson Science Law, LLC**, and $99,577.00 in attorneys' fees and $15,690.87 in costs for Howard Mishkind, **to be paid through an ACH deposit to Howard Mishkind's IOLTA account for prompt disbursement.**

The Clerk of Court is directed to enter judgment in accordance with this decision.[5]

**IT IS SO ORDERED.**

**s/Mindy Michaels Roth**
Mindy Michaels Roth
Special Master

[5] Entry of judgment can be expedited by each party's filing of a notice renouncing the right to seek review. Vaccine Rule 11(a).